756 F.2d 899
 244 U.S.App.D.C. 190, 11 Media L. Rep. 2080
 ACTION FOR CHILDREN'S TELEVISION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
CBS, Inc., National Association of Broadcasters, Washington
Association for Television and Children, Office of
Communication of the United Church of Christ, American
Broadcasting Companies, Inc., Communication Commission of
the National Council of Churches of Christ in the U.S.A.,
Association of Independent Television Stations, Inc.,
Forward Communications Corp., et al., National Broadcasting
Company, Inc., Intervenors.
 No. 84-1052.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 18, 1985.
Decided March 19, 1985.
 
 Petition for Review of an Order of the Federal Communications commission.
 Henry Geller, Washington, D.C., with whom William August, Cambridge, Mass., was on the brief, for petitioner.
 
 
 1
 C. Grey Pash, Jr., Counsel, F.C.C., Washington, D.C., with whom Bruce E. Fein, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on brief, for respondents. George Edelstein and Robert B. Nicholson, Dept. of Justice, Washington, D.C., entered appearances for respondent Dept. of Justice.
 
 
 2
 Sally Katzen, Washington, D.C., with whom Carl R. Raney, Joel Rosenbloom, Carol H. Fishman, Valerie G. Schulte, Washington, D.C., Corydon B. Dunham, New York City, and Howard Monderer, Washington, D.C., were on joint brief, for intervenors American Broadcasting Companies, Inc., et al. Erwin G. Krasnow, Washington, D.C., also entered an appearance for intervenor Nat. Ass'n of Broadcasters.
 
 
 3
 Barbara R. Shufro, Wilhelmina Reuben Cooke, Washington, D.C., and Donna Demac, New York City, were on brief, for intervenors Wash. Ass'n for Television and Children, et al.
 
 
 4
 J. Laurent Scharff, Jack N. Goodman and Robert J. Aamoth, Washington, D.C., were on brief, for intervenor Ass'n of Independent Television Stations, Inc. James M. Smith, Washington, D.C., also entered an appearance for intervenor Ass'n of Independent Television Stations, Inc.
 
 
 5
 Robert M. Gurss and Andrew Jay Schwartzman, Washington, D.C., were on brief, for amicus curiae Nat. Educ. Ass'n urging reversal.
 
 
 6
 Before WRIGHT, GINSBURG,* and SCALIA, Circuit Judges.
 
 
 7
 Opinion PER CURIAM.
 
 
 8
 PER CURIAM.
 
 
 9
 Petitioner Action for Children's Television and supporting intervenors ("petitioners") challenge the Federal Communications Commission's January 4, 1984 Report and Order defining the obligations of television broadcast licensees to their child audiences. See In re Children's Television Programming and Advertising Practices, 96 F.C.C.2d 634 (1984) ("1984 Order"). There the Commission found that the video market, considered as a whole, does not exhibit a clear failure to serve the needs and interests of the child audience, and that mandatory programming rules (including flexible processing guidelines for license renewal applications) raise serious problems of law and policy; and accordingly elected simply to reaffirm "the general licensee obligations emphasized by the Commission in its [Children's Television Report and Policy Statement, 50 F.C.C.2d 1 (1974) ("1974 Statement"), aff'd sub nom., Action for Children's Television v. FCC, 564 F.2d 458 (D.C.Cir.1977) ] and ... the general requirement that stations provide programming responsive to the needs and interests of the communities they serve." 96 F.C.C.2d at 655 (footnote omitted). Petitioners assert that the agency improperly considered the children's programming available from all video sources in finding no market failure warranting more intensive regulation of commercial broadcasting; that it gave insufficient consideration to flexible processing guidelines; that it arbitrarily and without explanation dropped the 1974 Statement's requirement that licensees make a reasonable effort to provide age-specific, informational, and educational children's programming; and that it ignored relevant evidence.
 
 
 10
 After carefully considering petitioners' arguments, we conclude that the Commission's decision was within the broad scope of its discretion and was adequately explained by the 1984 Order. See FCC v. WNCN Listeners Guild, 450 U.S. 582, 593-96, 101 S.Ct. 1266, 1273-75, 67 L.Ed.2d 521 (1981); NAACP v. FCC, 682 F.2d 993, 998 (D.C.Cir.1982). The differences between the 1984 Order and the 1974 Statement are attributable to changes in the Commission's judgment about how best to serve the public interest, convenience and necessity, and the reasons for these changes are stated in the Order with sufficient clarity to withstand judicial scrutiny. See Motor Vehicle Manufacturers Ass'n, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 42-43, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983).
 
 
 11
 Only two issues raised by petitioners require brief discussion. First, petitioners assert that it was improper for the Commission, in making its determination of public needs for children's programming, to take into account such programming available on cable television or on noncommercial television broadcasting stations. We think not. As to cable: While that medium is not available in all areas or to all segments of the viewing community, it has a sufficiently broad and increasing presence that the Commission may appropriately consider its offerings in determining the necessity for such nationwide rules as petitioners favored. This does not mean, and we do not interpret the Commission to suggest, that in a particular service area where cable penetration is insubstantial or nonexistent that medium can have any effect upon the broadcaster's assessment of the most significant needs of his community; or that the broadcaster in any community can disregard the needs of those not served by cable. We also see no need for the Commission to blind itself to the contribution of noncommercial television. To be sure, Congress did not intend noncommercial broadcasting to "relieve commercial broadcasters of their responsibilities to present public affairs and public service programs, and in general to program their stations in the public interest," S.REP. NO. 222, 90th Cong., 1st Sess. 6, reprinted in 1967 U.S.CODE CONG. & AD.NEWS 1772, 1777. But that does not mean that the Commission must require commercial broadcasters to pursue those responsibilities in disregard of the fact that some gaps in the public interest may have been filled by that source while other needs remain entirely unmet.
 
 
 12
 The second issue relates to age-specific programming. The 1974 Statement set forth the Commission's expectation that broadcast licensees would henceforth make a reasonable effort "to present programming designed to meet the needs of three specific age groups: (1) pre-school children, (2) primary school aged children, and (3) elementary school aged children." 50 F.C.C.2d at 7. Petitioners express the fear that the 1984 Order, which does not explicitly discuss age-specific programming, will relieve licensees of that obligation, echoing concerns voiced by Commissioner Rivera in his dissent from the Order. See 96 F.C.C.2d at 660 n. 11. We do not read the 1984 Order that way--nor, based on their representations at oral argument, do the broadcasters or the Commission. While it imposes no detailed age-specific requirements on licensees, and expresses doubts about a number of the programming categories relied on by the 1974 Statement (e.g., "informational" and "educational"), it explicitly affirms that "there is a continuing duty, under the public interest standard, on each licensee to examine the program needs of the child part of the audience and to be ready to demonstrate at renewal time its attention to those needs." 96 F.C.C.2d at 656. It is absurd to believe that "the program needs of the child part of the audience" were thought to be uniform, from pre-school through elementary school. It seems clear to us that under the 1984 Order broadcasters faced with renewal challenges based on the adequacy of their children's programming can be called upon to explain why they chose to focus on the needs and interests of certain age groups or other segments of the child audience, or why they emphasized emotional rather than cognitive needs. Licensees can expect the Commission to defer to reasonable programming decisions in this field, but that is a far cry from the wholesale abolition of licensee responsibility perceived by petitioners.
 
 
 13
 Petition denied.
 
 
 
 *
 Judge Ginsburg took no part in the decision of this case